## Shopp *v.* Patrons' Mutual Fire Insurance Company.

*Insurance—Fire insurance—Transfer of insurance—Evidence—Province of court and jury.*

Plaintiff had a policy of fire insurance, on his house, and on the contents of his barn. He testified that at the time of the last renewal of the policy, he requested the secretary of the insurance company to take $1,000 off the house and put it on the barn, and that the secretary said, "All right." No such transfer was made in the policy. Plaintiff's testimony was contradicted by the secretary, and was not corroborated by any other evidence in the case. After the renewal, a storm injured the roof of the barn, and under the cyclone clause plaintiff claimed damages, and a small amount was paid to him by the insurance company without any examination of the policy, and under a misapprehension of the facts. The barn subsequently burned down, and plaintiff claimed to recover the $1,000 of insurance which he alleged had been transferred from the house to the barn. *Held,* that it was error to submit the case to the jury.

Argued April 24, 1899. Appeal, No. 201, Jan. T., 1898, by defendant, from judgment of C. P. Cumberland Co., Nov. T., 1897, No. 57, on verdict for plaintiff in case of Christian Shopp v. The Patrons' Mutual Fire Insurance Company of Southern Pennsylvania. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit on a policy of fire insurance. Before E. W. BIDDLE, P. J.

In addition to the facts stated in the opinion of the Supreme Court, it appeared that on September 30, 1896, a storm tore the roof off plaintiff's barn, and the defendant sent adjusters to the premises, who fixed the amount of the loss at $67.04, and by resolution of the directors this sum was paid by the treasurer to the plaintiff, without, however, any examination of the policy, and under a misapprehension as to the facts. The adjuster testified that the policy was not produced to him, and that if he had seen the policy, he would not have approved the payment.

The court submitted the case to the jury.

Verdict and judgment for plaintiff for $2,878.80. Defendant appealed.

*Error assigned* among others was in refusing to give binding instructions for defendant.

*John Hays* and *W. F. Sadler*, with them *George M. Hays*, for appellant.—Parol evidence is not admissible to contradict or vary a written instrument, where there is neither allegation nor proof of any fraud, accident or mistake in its execution, nor of any promise then made as to its use which was subsequently violated : Jackson v. Payne, 114 Pa. 67 ; Thomas & Sons v. Loose, Seaman & Co., 114 Pa. 35 ; Van Voorhis v. Rea Bros. & Co., 153 Pa. 19 ; Phillips v. Meily, 106 Pa. 536 ; Thayer v. Seep, 168 Pa. 414 ; Jessop v. Ivory, 158 Pa. 71 ; Zoebisch v. Rauch, 133 Pa. 532 ; Dolph v. Hand, 156 Pa. 91.

A parol insurance by this company cannot be made : Cockerill v. Cincinnati Ins. Co., 16 Ohio, 148 ; Haslett v. Allegheny Ins. Co., 31 Leg. Int. 372 ; Act of May 1, 1876, sec. 17 ; P. & L. Dig. 2364, sec. 41.

*William Penn Lloyd* and *J. W. Wetzel,* of *Wetzel & Hamble-
ton,* for appellee.—The fraud or mistake of an insurance agent
within the scope of his authority will not enable his principal
to avoid a contract of insurance to the injury of the insured
who acted in good faith: Wilson v. Montg. Co. Mut. Fire Ins.
Co., 174 Pa. 554; Kalmutz v. Northern Mut. Fire Ins. Co.,
186 Pa. 571; Dowling v. Merchants Ins. Co., 168 Pa. 238;
Kiser v. Lebanon Mut. Ins. Co., 128 Pa. 565; Stauffer v. Penn.
Mut. Fire Ins. Co., 164 Pa. 200; Mentz v. Lancaster Fire Ins.
Co., 79 Pa. 475; Light v. Countrymen's Mut. Fire Ins. Co.,
169 Pa. 316; Highlands v. Lurgan Mut. Fire Ins. Co., 177 Pa.
566.

Where the evidence relied upon to create an estoppel is con-
flicting, the question is for the jury: Wachter v. Phœnix As-
surance Co., 132 Pa. 428.

OPINION BY MR. JUSTICE McCOLLUM, October 8, 1900:

The plaintiff's barn was burned on May 22, 1897, and the
articles contained therein and destroyed by the fire were valued
at $1,781.45. It was admitted by the defendant company that
it was liable to the plaintiff for that amount, while he asserted
that its liability was for the sum of $2,781.45. The policy of
insurance on the property of the plaintiff was issued on June 14,
1884 for five years; it was renewed for another five years on
June 14, 1889, and for a like period on June 14, 1894. The
amount of the insurance specified in the policy was not enlarged
or abridged at any time, and nothing appears in the policy or
in either of the renewals which indicates a transfer of any part
of the insurance from the dwelling house to the barn. The
amount of the insurance upon the dwelling house and the fur-
niture, carpets, bedding and wearing apparel contained therein
was $1,950. The balance of the insurance was $2,000, and ap-
portioned as follows, to wit: $400 on hay, grain and straw in
barn, $150 on corn in cribs, $500 on farm machinery and wa-
gons, $50.00 on harness and horse gears, $100 on pleasure car-
riages and $1,800 on live stock. The amount for which the de-
fendant company conceded its liability represented the plaintiff's
loss upon five of the six items included in the property to which
the balance of insurance above mentioned was applicable. If
the dwelling house and its contents had been destroyed by fire

at any time after June 14, 1884, and previous to May 22, 1897, what could have prevented the plaintiff from enforcing payment of his policy in accordance with its terms ? Of course the defendant company could not in such case resist payment of the insurance upon the dwelling house because it denies that it ever transferred any part of the insurance to other property mentioned in the policy issued to the plaintiff in 1884, and renewed as hereinbefore stated.

The plaintiff testified that on or about June 2, 1894, he called upon the secretary of the insurance company and stated to him that he wished to have his policy renewed, as it was near expiring ; that he left it with the secretary and paid for the renewal and then went home. When pressed to state what else he said to the secretary, he replied that he requested him to take $1,000 off the house and put it on the barn, and he said, " All right." The plaintiff also testified that he signed the renewal, and that the policy with the renewal was returned to him by the secretary in about two days after he went home, and that he then put the papers in his secretary as he was accustomed to do. It is admitted that he had possession of the policy and renewal and often saw them with his other papers, but that he never examined them to see whether his alleged request for a transfer of $1,000 from the dwelling house to the barn had been complied with. The testimony of his son David Shopp contained nothing which showed or tended to show that a request was made upon Secretary Mohler to transfer $1,000 of the insurance as hereinbefore referred to, or in the testimony of his brother, Jacob S. Shopp, relating to his interview with Mohler after the fire, which sustained in any degree the alleged request. The testimony of Herman Hammond was the same in part as that of Jacob S. Shopp and failed to sustain the plaintiff's contention on this point.

Mohler testified in positive terms that the plaintiff never requested him to transfer any portion of the insurance from the dwelling house to the barn, that there was at no time any written application for insurance on the barn, or any application presented to or approved by any of the directors of the insurance company. The testimony of Dietz and Myers is in perfect accord with the testimony of Mohler. As the learned court below distinctly stated in his charge, that if the testimony of the

plaintiff as to what took place in his interview with the secretary of the defendant company was the only evidence tending to sustain his claim for $1,000 by reason of the loss of the barn, he would not consider it of sufficient weight to be submitted to the jury, and as we have seen that it was not sustained by the testimony of the plaintiff's witnesses, the only inquiry remaining is whether the payment of $67.04 under the cyclone clause of the policy, operates as a transfer of $1,000 of the insurance from the dwelling house to the barn.   We are clearly of the opinion that it cannot.   The unanswered explanation of the circumstances and misapprehension under which payment was made renders the contention that it sustains the claim of the plaintiff, that he requested a transfer of $1,000 of the insurance, as hereinbefore stated, without substantial ground to rest upon.   We therefore conclude that the learned court below erred in submitting to the jury the question whether the alleged transfer of the $1,000 sustained the plaintiff's contention.

Judgment reversed as to the $1,000, and affirmed as to the balance of the plaintiff's claim.